Filed 12/18/24  In re Isaac Y. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ISAAC Y., a Person Coming Under the Juvenile Court Law. | B334115 (Los Angeles County Super. Ct. No. 23CCJP01948A) |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ASHLEY T., <br><br> Defendant and Appellant. | |
| In re ISAAC Y., a Person Coming Under the Juvenile Court Law. | B334836 (Los Angeles County Super. Ct. No. 23CCJP01948A) |

DEPARTMENT OF CHILDREN
AND FAMILY SERVICES,

     Plaintiff and Respondent,

     v.

B.Y.,

     Defendant, Objector and
Appellant.

APPEALS from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed in part; dismissed in part.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Linda S. Votaw, under appointment by the Court of Appeal, for Defendant, Objector and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Ashley T. (mother) appeals from the juvenile court's November 2023 jurisdictional findings and dispositional orders declaring her son Isaac Y. a dependent of the court under Welfare

and Institutions Code section 300, subdivision (b)(1)[1] and removing him from her custody (B334115).[2] B.Y. (father) appeals from the court's January 2024 and May 2024 orders granting mother unmonitored visitation (B334836). We dismiss father's appeal from the January 2024 visitation order (B334836) as moot. We affirm all other orders.[3]

## FACTUAL BACKGROUND

Isaac was born in August 2020 to mother and father.

### Initial referrals

The Los Angeles County Department of Children and Family Services (DCFS) received its initial referral on May 23,

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Mother also filed a notice of appeal from the court's March 2024 order reverting her visits from unmonitored to monitored status. However, as mother failed to raise any arguments challenging this order in her briefing, we deem this challenge abandoned. (See *In re Phoenix H.* (2009) 47 Cal.4th 835, 845 [failure to support a point with argument and citation to authority constitutes abandonment of the issue].)

[3]     Both parents filed multiple appeals.

Mother appealed (1) B334115, the November 2023 jurisdictional findings and dispositional order; and (2) B336735, the March 2024 order reverting her visits to monitored status.

Father appealed (1) B334836, the January 2024 order granting mother unmonitored visits; and (2) B337642, the May 2024 order maintaining unmonitored visits upon termination.

This court consolidated mother's first two appeals under B334115 and father's first two appeals under B334836. This opinion concerns these two remaining appeals.

2023, following what was reported to be the second call to the child protective hotline in a week. The reporting person claimed on May 18, 2023, mother had contacted the caller saying she wanted to jump off a roof and kill herself. Law enforcement was called, and mother was taken to a hospital for about 16 hours before being released.

Days later, on May 23, mother went to the caller's location, screaming and blaming the caller for everything wrong. The caller reported mother appeared to be having a manic episode, was incoherent, and said she needed help. Mother also claimed she and Isaac were being abused by father, but would not provide details. The caller expressed no concerns about father, but worried mother would forget to feed Isaac as she had in the past, noting mother appeared to have no support system.

Upon receipt of the referral, DCFS contacted Los Angeles Police Department (LAPD), who confirmed receiving a report from Isaac's school on May 11, 2023, that mother called threatening to commit suicide by jumping off the roof. LAPD responded to the hotel where mother was staying, placed her on a section 5150 psychiatric hold, and transported her to Exodus Mental Health Services.

**Petition and initial proceedings**

In June 2023, DCFS filed a petition alleging mother's mental condition placed Isaac at risk, specifically alleging that on June 5, 2023, mother exhibited erratic behavior, threatened to kill Isaac and father, fled from a psychiatric hospital hold by driving erratically, and threatened not to feed or care for Isaac. The petition also alleged mother had threatened suicide and failed to take prescribed psychotropic medication. As to father, the petition alleged he knew of mother's mental condition but

failed to protect Isaac by allowing mother to reside in the home and have unlimited access to the child.

At the June 26, 2023 initial hearing, the court identified B.Y. as Isaac's presumed father, detained Isaac from mother, placed him with father, and ordered monitored visits for mother.

**Services and evaluations**

Throughout the proceedings mother engaged in services including weekly therapy, regular psychiatric care, and a 10-session parenting course. Dr. James Long provided a psychiatric evaluation of mother, opining mother's mental problems did "not rise to the level of putting her at risk of harming her son or anyone." While noting mother demonstrated some impulsivity in making threatening statements when under stress, Dr. Long concluded she was not at risk of harming Isaac, and he was safe in her care.

However, Dr. Long's evaluation also noted mother's tendency toward dangerous explosive outbursts and an inability to recognize the impact of her intense anger on others. He added it was of "great concern" to him that mother showed considerable denial and a tendency to rationalize her behavior.

During an interview, father revealed mother had endangered Isaac when she hit father with a broom while he was holding Isaac. Further, father had recorded mother threatening not to take care of Isaac, not to feed him, to abandon him, to let him die, and to kill him. When mother was asked about the video, she denied making any claim of intentionally refusing to feed Isaac and said it was taken out of context. She also claimed it was filmed without her consent or knowledge and did not show the prior hour and a half of arguing. She did, however, recognize her error and wished she could "take it back."

**Jurisdiction/disposition findings**

In November 2023, the court sustained the petition, declared Isaac a dependent, removed him from mother's custody, placed him with father, and ordered mother to have monitored visitation. The court observed it was not concerned about a current risk mother would kill Isaac, but found removal was necessary due to mother's "lack of insight," which exposed Isaac to a risk of future harm "should mom become incapacitated."

**Changes to mother's visitation**

In January 2024, based on mother's progress in services, the court changed mother's visitation to unmonitored. Several incidents then occurred, including mother screaming and appearing to spiral out of control at a "Child Family Team" meeting and mother using profanity and making disparaging remarks about father during Facetime calls with Isaac. Additionally, mother's anger management instructor reported she was making minimal progress and had made statements about suicide. Isaac's daycare provider terminated services for Isaac due to mother engaging in abusive and inappropriate behavior toward the daycare provider. As a result, father missed work while seeking alternate care for Isaac Based on these events, the court returned mother to monitored visits with Isaac in March 2024.

**Termination of jurisdiction**

On May 8, 2024, the court terminated dependency jurisdiction and awarded joint legal custody to both parents, with sole physical custody and tiebreaking authority to father. The court also allowed mother to have unmonitored visitation.

In making its ruling, the court found mother had made "some global progress" and gained insight. While acknowledging

that "concerns about the child's emotional health" were not minor, the court determined unmonitored visits were appropriate based on mother's progress and her bond with Isaac. The parents were ordered to attend mediation to determine a visitation schedule.

## DISCUSSION

### I. Preliminary issues with mother's appeals

#### A. *Mother's appeals are not moot*

We begin by addressing whether mother's appeals are rendered moot by the juvenile court's May 8, 2024 termination of dependency jurisdiction.[4] Generally, an appeal may become moot when an event renders it impossible for the appellate court to grant effective relief. (*In re N.S.* (2016) 245 Cal.App.4th 53, 58–59.) However, when a juvenile court's finding forms the basis for an order that continues to impact a parent's rights, by restricting visitation or custody that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction. (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)

The current appeals are not moot for two reasons. First, the jurisdictional findings serve as the basis for custody orders that continue to affect mother's parental rights. Second, mother filed a separate, timely notice of appeal from the termination orders in B338570 that will allow this court to provide effective relief with regard to the jurisdictional finding and removal order once briefing is completed. (See *In re Rashad D.* (2021) 63 Cal.App.5th 156, 163–165 [holding a challenge to jurisdiction would not have

---

[4] The parents have both appealed from the May 2024 termination orders (B338570). These are pending and will be addressed in a separate opinion once briefing is completed.

been moot if parent had challenged termination].) Thus, mother's appeals will be considered.

**B.** ***Mother's appeal of jurisdiction may be considered despite father's nonappeal***

Next we consider whether mother's challenge to the jurisdictional findings may be reviewed without father appealing those findings. Generally, a reviewing court need not consider jurisdictional challenges by one parent where jurisdiction over the child is supported by unchallenged findings against the other parent. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492.) Jurisdiction over a minor is proper if the actions of either parent bring the child within the definition of a dependent. (*Ibid*.)

The designation of a parent as "offending" versus "nonoffending" may have implications beyond jurisdiction itself. An "offending" parent is one whose conduct formed the basis for jurisdiction, while a "nonoffending" parent did not contribute to the circumstances justifying court intervention. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763, disapproved on another ground in *D.P., supra*, 14 Cal.5th at p. 283.) This distinction may have implications for future dependency proceedings and parental rights. (*Ibid*.)

Here, the court sustained allegations mother's mental condition and conduct placed Isaac at risk. These findings may designate her as an "offending" parent that will bear on future requirements to regain custody, result in a higher burden to modify an exit order, influence any future child welfare matter, and could also affect custody decisions after this dependency case concludes.

Given these potential consequences, we will consider mother's challenges to the jurisdictional findings on their merits.

## II. Substantial evidence supports the jurisdictional findings

We review the juvenile court's jurisdictional findings for substantial evidence, viewing the record in the light most favorable to the court's determinations. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Section 300, subdivision (b)(1) authorizes jurisdiction when there is a substantial risk a child will suffer serious physical harm or illness due to a parent's mental illness. The court need not wait until a child is seriously harmed before assuming jurisdiction. (*In re I.J., supra*, at p. 773.)

Substantial evidence supports the juvenile court's finding here that mother's mental condition placed three-year-old Isaac at substantial risk of serious physical harm. Mother's mental health crisis in May–June 2023 led to multiple psychiatric hospitalizations and dangerous behaviors, including driving into oncoming traffic while fleeing a psychiatric hospital hold. Prior to that mother physically endangered Isaac by hitting father with a broom while he was holding Isaac. Most critically, father recorded mother making explicit threats to Isaac's life and safety, including threats to withhold food, to abandon him, to let him die, and to kill him.

Dr. Long's psychological evaluation revealed mother's pattern of dangerous explosive outbursts and her inability to recognize how her intense anger endangers others. The doctor expressed "great concern" about mother's considerable denial and tendency to rationalize her behavior. This clinical assessment was borne out when mother, confronted with the video of her threats to Isaac, responded by denying she had refused to feed him and deflecting responsibility by complaining the video was taken without her consent or knowledge and did not present

9

context. Her response was consistent with Dr. Long's concerns about mother's lack of insight regarding how her anger could endanger Isaac.

Given Isaac's young age and vulnerability, mother's dangerous conduct, explicit threats, and lack of insight are substantial evidence supporting the jurisdictional finding.

## III. Substantial evidence supports the removal order

Removal of a child from the parents is proper when the juvenile court finds clear and convincing evidence of a substantial danger to the child if the child were returned home and there are no reasonable means by which the child's physical health can be protected without removal. (§ 361, subd. (c).) When reviewing the removal order, we consider whether there is substantial evidence from which a reasonable factfinder could find it highly probable that the findings are true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

The evidence detailed above amply supports the juvenile court's removal order. Mother threatened Isaac's safety in her recorded statements and her violent conduct directed at father. This coupled with her lack of insight into how her conduct affected Isaac, shows he would be at substantial risk in her care. No reasonable means existed to ensure Isaac's safety without removing him from mother due to her seeming inability to control her conduct and lack of insight into its risk to Isaac. The juvenile court reasonably found this evidence to be sufficient to support the removal order. We agree.

## IV. Visitation order was proper exercise of discretion

After Isaac was removed from mother's custody, she was allowed monitored visitation that became unmonitored in January 2024. When jurisdiction was terminated in May 2024,

10

unmonitored visitation by mother was allowed to continue. Father challenges the decisions to allow unmonitored visitation.

We review an order setting visitation terms for abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) "'When applying the deferential abuse of discretion standard, "the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."'" (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102.)

### A.    *The challenge to the January 2024 visitation order is moot*

Father, in B334836, challenges the January 2024 order granting mother unmonitored visits with Isaac. In May 2024 the court terminated dependency jurisdiction and issued an exit order that included provisions for unmonitored visitation.

"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) "[D]ismissal for mootness in such circumstances is not automatic, [however,] but 'must be decided on a case-by-case basis.'" (*Ibid*.) Here, the May 2024 order terminating jurisdiction and allowing unmonitored material visitation completely superseded the interim January visitation order. Even if we found error in the January order, we could not provide meaningful relief because that order is no longer operative. An appeal becomes moot when events render it impossible to grant effective relief. (*D.P., supra*, 14 Cal.5th at p. 276.) The appeal from the January 2024 order (B334836) is therefore dismissed as moot.

11

**B.** *Father has standing to challenge the visitation orders*

Mother contends father lacks standing to challenge the visitation order in B334836, because the order does not affect his custody rights. A parent has standing to appeal only when their own rights are injuriously affected in an immediate and substantial way. (*In re K.C.* (2011) 52 Cal.4th 231, 236.) We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540.)

As the parent with sole physical custody, father must provide stable care for Isaac. Mother's visits with Isaac have disrupted his ability to provide stable care, as demonstrated with her conduct during a visit with Isaac that caused Isaac's daycare to terminate services, forcing father to miss work and find alternative childcare arrangements. Such disruptions to Isaac's established care routines directly impact father's custodial rights, conferring standing to challenge the visitation orders.

**C.** *Unmonitored visitation was not an abuse of discretion*

Father first contends the court abused its discretion by considering only Isaac's physical safety while disregarding his emotional well-being. We note the court expressly found its "concerns about the child's emotional health" were not minor. The court also mentioned the emotional effect on Isaac caused by the "ongoing toxicity and inability to be adults" both parents displayed in front of him.

In considering mother's visitation, the court examined both physical and emotional risks, stating it was "scouring" the record for ways "mother put her child's safety at risk" and found no

12

evidence mother's behavior was "so erratic that it put her child's safety at risk." Finding no such risks, and noting mother's progress and ability to care for Isaac, the court determined unmonitored visitation serves Isaac's best interests.

Rather than drawing a distinction between physical and emotional safety, the court engaged in a comprehensive analysis of Isaac's best interests. We can find no abuse of discretion.

The May 2024 order allowed mother unmonitored visitation while maintaining father's sole physical custody. The best interest of the child standard is used when determining visitation rights at the termination of dependency proceedings. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113.) The purpose of this standard is to maximize a child's opportunity to develop into a stable, well-adjusted adult. (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66.)

When determining Isaac's best interests, the court was required to decide whether substantial evidence supported removing the monitoring requirement, as monitors serve a protective function in regulating parental behavior and ensuring child safety. To demonstrate the need for monitoring, father raises several incidents from April 2024: mother was emotionally unavailable during visits, she threatened to cancel visits when Isaac asked for father, and she behaved in ways that left Isaac distressed and crying. He also highlights concerns expressed by others, including mother's anger management instructor reporting minimal progress and the social worker noting mother's "outbursts have a huge impact on Isaac's emotional wellbeing."

Mother, however, completed court-ordered services and showed improved emotional regulation and parenting skills to the court that then found her visits were positive, and Isaac showed excitement to see mother and comfort in her care.

13

Mother's progress and her bond with Isaac can be substantial evidence that support the trial court's discretion to transition from monitored to unmonitored visits.

By maintaining sole physical custody with father, the order protects Isaac's stable home environment. By changing maternal visits to unmonitored, the juvenile court allows Isaac's emotional bond with mother to develop more naturally. This approach is a proper exercise of discretion as it protects Isaac's safety interests while supporting his relationship with mother. Unable to find an abuse of discretion, we affirm the visitation order.

## DISPOSITION

Father's appeal from the January 2024 visitation order is dismissed as moot. The other orders of the juvenile court are affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.